# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00372-CV

---

**Macedonio Sanchez Guillen, Appellant**

**v.**

**National American Insurance Company, Cash Construction Company, and Richard Pena, Appellees**

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-25-001140, THE HONORABLE CORY LIU, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Macedonio Sanchez Guillen, pro se, appeals from the trial court's orders dismissing his claims against Cash Construction Company (Cash Construction); National American Insurance Company (NAICO), which was Cash Construction's workers' compensation carrier; and attorney Richard Pena, who represented Sanchez Guillen in the workers' compensation proceedings from 2001 to 2004. We affirm.

## BACKGROUND

Sanchez Guillen was employed by Cash Construction in October 2001 when he was severely injured while working, sustaining a crush injury to his left arm, left groin, and left thigh; multiple fractures; and soft-tissue injuries. As a result of this accident, he has a prosthetic hip that he asserts must be replaced every five years to avoid complications from serious infection as a result of breakdown of the material from which the prosthetic is made.

Sanchez Guillen has undergone multiple surgeries to address his chronically infected hip, and despite having received many rounds of intravenous antibiotics, Sanchez Guillen's hip infections culminated in an episode of sepsis, and doctors ultimately had to amputate his left leg at the hip in August 2023, after which he underwent further surgery to close the wound.

Sanchez Guillen received workers' compensation benefits to cover the costs of his care beginning in 2001. Unsatisfied with the benefits and care he was receiving, Sanchez Guillen hired Pena in 2003 "to file a civil claim for damages for the mistreatment I had been receiving" from NAICO. Pena pursued a claim or claims through the Texas Workers' Compensation Commission (the Commission)[1] but did not sue NAICO in district court, and informed Sanchez Guillen of that fact in August 2003. Pena succeeded in helping Sanchez Guillen procure "temporary economic benefits" from the Commission. According to Sanchez Guillen's appellate brief, he repeatedly requested that Pena provide him a "formal resignation letter" after learning that Pena had sent a letter to the Commission in 2004 stating that Pena no longer represented Sanchez Guillen. Pena provided the requested resignation letter to Sanchez Guillen in 2009.

Sanchez Guillen sent an email to appellees in February 2023, followed by suing them in April 2023. The 2023 petition was based on the 2001 incident but did not cite the labor code or other state statutes; instead, it cited various provisions of federal and international law in conjunction with the assertion that appellees had perpetrated a "continuous and premeditated conspiracy to violate [Sanchez Guillen's] human rights." In August 2023, Sanchez Guillen

---

[1] In 2005, the Texas Legislature reformed the workers' compensation system, including abolishing the Texas Workers' Compensation Commission and transferring its duties to the Texas Department of Insurance, Division of Workers' Compensation. *See generally* Act of May 29, 2005, 79th Leg., R.S., ch. 265, 2005 Tex. Gen. Laws 469, 476 (H.B. 7).

submitted an open records request to receive a complete copy of his workers' compensation claim case file from the Division of Workers' Compensation (the Division). In September and November 2023, the district court entered orders granting appellees' pleas to the jurisdiction, dismissing Sanchez Guillen's claims against Cash Construction and NAICO and dismissing with prejudice all claims against Pena.

Sanchez Guillen asserts that in January 2024, "with the support of Marvin Antonio Molina Perez as the lead collaborator of 'Somber Writing,'"[2] he initiated further proceedings before the Division. The record contains a June 2024 letter from the Division's Audits and Investigations Section that references Sanchez Guillen's request for a benefit review conference. The letter advised that the Division will not initiate an investigation because correspondence submitted by Sanchez Guillen did not include a specific argument indicating a violation of the labor code or relevant provisions of the administrative code. The letter also opined that Sanchez Guillen may seek to pursue complaints against an attorney through the State Bar of Texas, and the letter provides the state bar's contact information. An October 2024 order from the Division denied Sanchez Guillen's request for a contested case hearing because "compensability of the work injury has not been denied. Moreover, the Division records show that the claimant reached maximum medical improvement and had an impairment rating assigned as a result of the work injury." The order further provided, "The claimant seeks monetary damages and other forms of relief that the Division does not have jurisdiction to adjudicate. For the above reasons, the claimant's request for a contested case hearing is DENIED." In a November 2024 order, the Division denied Sanchez Guillen's motion objecting

---

[2] Sanchez Guillen's petition describes Somber Writing as an "international human rights defense organization."

3

to the order denying his contested case hearing, noting that "the claimant alleges that he has been the victim of a series of negligent, malicious, and deceitful actions by the insurance carrier, the claim employer, and his former workers' compensation attorney" and concluding that "the Division does not have jurisdiction to adjudicate this type of dispute." Correspondence attached to the petition reflects that the Division initiated an investigation in relation to Sanchez Guillen's claims because it received a complaint that Molina Perez, a non-lawyer advocating on behalf of Sanchez Gullen, had filed a frivolous or baseless action to obtain benefits; that investigation was referred to the Division's Enforcement Section.

In February 2025, Sanchez Guillen filed his petition in the underlying lawsuit. The petition contains a lengthy statement of facts, after which it separately lists, under the heading "Legal Bases," a variety of provisions from the insurance code, the labor code, and the penal code, without comment as to which provisions apply to which facts or which defendant. The same section also lists Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and chapter 21 of the labor code under the heading "Discrimination and Mistreatment by Cash Construction Company." The petition further alleges four violations of the administrative code against NAICO. Nearly all of Sanchez Guillen's claims arose from events that occurred in the early- to mid- 2000s. The bulk of his claims are based on allegations that the Commission (and later the Division), along with NAICO, mishandled his case from its inception with the result that he did not receive timely medical care, and that NAICO, Cash Construction, and Pena "acted in a collusive and deliberate manner to obstruct [his] access to the benefits [he] was entitled to." In addition to "collusion," Sanchez Guillen's claims against Pena stem from Pena's "legal abandonment" when Pena let the Commission know he was no longer representing Sanchez Guillen in 2004 and Pena's not filing a civil suit against NAICO and

4

Cash Construction outside of claims submitted through the Commission. The petition asserts that Pena violated Texas Disciplinary Rules of Professional Conduct 1.01 (Competent and Diligent Representation) and 1.03 (Communication) but does not explain what facts support these alleged violations. Sanchez Guillen alleged that, in addition to colluding with Pena and NAICO, Cash Construction employed him at the time of the accident, and in 2004, when Sanchez Guillen visited Cash Construction's office requesting "a suitable work assignment," he "was met with mistreatment and humiliation by the staff at Cash Construction." Sanchez Guillen pleaded that the discovery rule applies and that the statutes of limitations for his claims did not begin to run until August 16, 2023, which is the date he received the workers' compensation file from the Division.

The appellees each filed motions seeking dismissal of Sanchez Guillen's claims, which were granted in separate orders. Pena filed a combined plea to the jurisdiction and motion to dismiss under Rule 91a. *See* Tex. R. Civ. P. 91a (Dismissal of Baseless Causes of Action). His motion asserted that Sanchez Guillen failed to exhaust administrative remedies, that the claims against Pena are barred by res judicata based on the same claims having been asserted in the 2023 suit, and that all claims are barred by the applicable statutes of limitations. The trial court granted Pena's motion, dismissing all claims against Pena with prejudice. Cash Construction filed a plea to the jurisdiction based on failure to exhaust administrative remedies and moved to dismiss under Rule 91a any claims over which the court might have jurisdiction. The trial court granted both motions, dismissing for want of jurisdiction the claims against Cash Construction arising out of Sanchez Guillen's workers' compensation claims and dismissing with prejudice all other claims against Cash Construction. NAICO filed a plea to the jurisdiction based on Guillen's failure to exhaust administrative remedies. The trial court granted the plea,

5

dismissing all claims against NAICO for want of jurisdiction. Sanchez Guillen appeals, asserting that he does "not seek review of workers' compensation benefits or reversal of a medical determination, but rather civil redress for independent fraudulent wrongs."[3]

## ANALYSIS

**Standard of Review**

***Plea to the jurisdiction***

"A plea to the jurisdiction challenges a trial court's authority to decide a specific cause of action." *Gattis v. Duty*, 349 S.W.3d 193, 200 (Tex. App.—Austin 2011, no pet.) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). Its purpose "is 'to defeat a cause of action without regard to whether the claims asserted have merit.'" *Town Park Ctr., LLC v. City of Sealy*, 639 S.W.3d 170, 181 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). We review a trial court's ruling on a plea to the jurisdiction de novo. *Sampson v. University of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (citing *Miranda*, 133 S.W.3d at 226). We do not look to the merits of the cause of action but consider only the pleadings and the evidence relevant to the

---

[3] In addition to challenging the trial court's orders, Sanchez Guillen complains that his right to due process was violated because at the hearing on appellees' motions to dismiss, "appellees introduced the precedent In re Accident Fund without proper notice or prior filing in the INBOX system, in violation of TRCP 21a and TRAP 9.5. This procedural violation deprived the appellant of the opportunity to respond, thus compromising procedural fairness and the right to defend." (Emphases omitted). Sanchez Guillen raised this complaint in the trial court in a written motion. The rules Sanchez Guillen relies on do not prohibit parties from discussing precedents at hearings. *See* Tex. R. Civ. P. 21a (Methods of Service); Tex. R. App. P. 9.5 (Service). NAICO's counsel mentioned the case in support of arguments included in its written motion. We conclude that counsel's citation to this case at the hearing did not violate Sanchez Guillen's right to due process.

jurisdictional inquiry. *See Miranda*, 133 S.W.3d at 227; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

We liberally construe the pleadings to determine if the plaintiff "has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226–27. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

If the plea to the jurisdiction challenges the existence of jurisdictional facts, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v. City of Texas City*, 465 S.W.3d 623, 632–33 (Tex. 2015) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Suarez*, 465 S.W.3d at 633 (citing *Miranda*, 133 S.W.3d at 227). "If the evidence creates a fact question regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder." *Id.* (citing *Miranda*, 133 S.W.3d at 227–28). "If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law." *Id.* (citing *Miranda*, 133 S.W.3d at 228).

***Rule 91a motion***

"We review the merits of a Rule 91a motion de novo." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). "[W]hether a defendant is entitled to dismissal under the facts alleged is a legal question." *In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding). Rule 91a of the Texas Rules of Civil Procedure allows a party to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. Under Rule 91a:

> A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

*Id.*

"Rule 91a limits a court's factual inquiry to the plaintiff's pleadings but does not so limit the court's legal inquiry." *Bethel*, 595 S.W.3d at 656; *see In re Farmers*, 621 S.W.3d at 266 (citing Tex. R. Civ. P. 91a.6) ("In ruling on a Rule 91a motion to dismiss, a court may not consider evidence but 'must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits.'"). Therefore, while we construe the pleadings liberally in favor of the petitioner and accept as true the factual allegations, we need not accept as true any legal conclusions. *See Stone v. Randolph-Brooks Fed. Credit Union*, No. 03-21-00422-CV, 2023 WL 2394297, at *2 (Tex. App.—Austin Mar. 8, 2023, pet. denied) (mem. op.).

**NAICO's Plea to the Jurisdiction**

Construing Sanchez Guillen's pleadings liberally, his "legal bases" under the insurance code, the labor code, and the penal code, as well as the violations of the administrative code, arose from allegations that the Commission (and later the Division), along with NAICO, mishandled his case from its inception in 2001, including acting in bad faith, committing fraud, negligence, "document tampering," and "collusion" regarding the handling of his workers' compensation benefits. Sanchez Guillen also specified that between 2019 and 2022 he suffered "multiple severe relapses, including critical infections, progressive lymphedema, and damage to vital organs due to NAICO's failure to authorize necessary treatments and surgeries," leaving him "on the brink of death several times." He further alleged that in 2022, adjuster Chad Williams informed him that "medical services would be suspended and [his] case administratively closed by the insurance company" because the "convalescence process had exceeded 20 years without achieving satisfactory improvement and that the company had [spent] an excessive amount of money on [his] recovery, without it ever reaching 100%." NAICO based its plea to the jurisdiction on Sanchez Guillen's failure to exhaust administrative remedies. Therefore, whether the trial court properly dismissed Sanchez Guillen's claims for want of jurisdiction depends on whether he was required to exhaust administrative remedies and, if so, whether he did.

Sanchez Guillen argues that no law, including the Texas Workers' Compensation Act, requires him to pursue his claims through its administrative procedures or otherwise exhaust administrative remedies because (1) he has filed an "autonomous civil lawsuit, grounded in collusion, bad faith, and legal abandonment" for which "the relief sought is not workers' compensation benefits, but civil remedies for tortious conduct" and (2) he has already tried but

9

received orders in 2024 denying his requests for a benefit review conference and for a contested case hearing. We disagree.

Sanchez Guillen's claims against NAICO, from as early as 2001 to present, arise from its handling (or mishandling) and settling (or failing to timely settle) claims for benefits related to his workers' compensation case. The Texas Supreme Court has explained,

> In light of the Act's comprehensive system for resolving workers' compensation claims and the Division's role in that process, we concluded in *Ruttiger* that the Act provides the exclusive procedures and remedies for claims alleging that a workers' compensation carrier has improperly investigated, handled, or settled a workers' [sic] claim for benefits.

*In re Crawford & Co.*, 458 S.W.3d 920, 923–24 (Tex. 2015) (per curiam) (orig. proceeding) (referencing *Texas Mut. Ins. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012)); *see Liberty Mut. Ins. v. Adcock*, 412 S.W.3d 492, 495 (Tex. 2013) (explaining that "the Legislature devised a comprehensive workers' compensation system, with specific benefits and procedures based on the public policy of the State of Texas. We concluded in *Ruttiger* that the Court should not alter the Act's comprehensive scheme, and we reaffirm that principle today."). Pleading claims under common law does not alter the requirement to exhaust administrative remedies if the claims arise out of the investigation, handling, or settling of a workers' compensation claim. *See Ruttiger*, 381 S.W.3d at 443–45 (overruling *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210 (Tex. 1988) because the 1989 legislative reform of the Workers' Compensation Act obviated the need to allow common-law remedies for claims arising out of a carrier's investigation, handling, or settling of a claim for workers' compensation benefits); *Apollo Enters., Inc. v. Scripnet, Inc.*, 301 S.W.3d 848, 860 (Tex. App.—Austin 2009, no pet.) ("[T]he legislature has created a comprehensive scheme whereby employees who are covered by workers' compensation

insurance and incur 'compensable' injuries are provided the exclusive remedy of 'workers' compensation benefits' . . . in lieu of common-law remedies.").

The Act provides a dispute-resolution process consisting of four possible steps: a benefit review conference, a contested case hearing, review by an administrative appeals panel, and judicial review. *See* Tex. Lab. Code §§ 410.021, 410.151, 410.202, 410.251. Disputes may be resolved at any of these levels. *See id.* § 410.025(b) (providing that "the division shall schedule a contested case hearing to be held not later than the 60th day after the date of the benefit review conference if the disputed issues are not resolved at the benefit review conference"); *id.* § 410.029 ("A dispute may be resolved either in whole or in part at a benefit review conference."); *id.* § 410.169 ("A decision of an administrative law judge regarding benefits is final in the absence of a timely appeal by a party and is binding during the pendency of an appeal to the appeals panel."). Although Sanchez Guillen sought a benefit review conference, which was denied on the ground that he failed to assert a specific argument indicating a violation of the labor code or relevant provisions of the administrative code, and sought a contested case hearing, which was also denied, this Court has not been made aware of the contents of those complaints to determine the extent to which they overlap with claims made in the underlying suit on appeal, nor has Sanchez Guillen explained why he did not pursue an appeal and judicial review of those denials. He asserts that the Division has consistently denied jurisdiction over his claims and that it "warned the injured worker and his collaborator that any further requests to schedule Contested Case Hearings (CCH) could result in administrative, financial, or even criminal penalties." As a result, he says "he and his collaborator chose not to pursue the administrative route any further and turned to civil jurisdiction." Thus, rather than seeking a benefit review conference based on a specific claim, appealing within the Division, or

11

seeking judicial review of Division orders, Sanchez Guillen seeks to sidestep the comprehensive administrative scheme that courts have held requires exhaustion of administrative remedies. In arguing that he should be allowed to proceed with his suit, Sanchez Guillen urges that he has "lost faith" in the Division. But "[p]arties cannot avoid exhaustion-of-remedies requirements merely because they might be unsuccessful before the agency." *Apollo Enters.*, 301 S.W.3d at 866 (citing *In re Liberty Mut. Fire Ins.*, 295 S.W.3d 327, 328–29 (Tex. 2009) (orig. proceeding)).

Because Sanchez Guillen's claims against NAICO present disputes for which he needed to exhaust administrative remedies, the district court did not err in granting NAICO's plea to the jurisdiction.

**Cash Construction's Plea to the Jurisdiction and 91a Motion**

Sanchez Guillen's live pleading listed, without argument, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and chapter 21 of the labor code under the heading "Discrimination and Mistreatment by Cash Construction Company." However, the only factual allegations asserted against Cash Construction are that it colluded with appellees to obstruct his access to workers' compensation benefits; it employed Sanchez Guillen at the time of the accident; and in 2004, when Sanchez Guillen visited Cash Construction's office requesting "a suitable work assignment," he "was met with mistreatment and humiliation by the staff at Cash Construction." Cash Construction filed a plea to the jurisdiction based on failure to exhaust administrative remedies and moved to dismiss under Rule 91a any claims over which the court might have jurisdiction. The trial court granted both motions, dismissing for want of jurisdiction the claims against Cash Construction arising out of Sanchez Guillen's workers' compensation claims and dismissing with prejudice all other claims against Cash Construction.

12

Insofar as Sanchez Guillen's pleading implicated Cash Construction in "collusion" or any other claims related to his workers' compensation case, the trial court correctly dismissed those claims for the same reasons it dismissed the claims against NAICO—Sanchez Guillen failed to exhaust administrative remedies. *See* Tex. Lab. Code § 408.001 ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer . . . ."); *Apollo Enters.*, 301 S.W.3d at 860 (acknowledging the "comprehensive scheme whereby employees who are covered by workers' compensation insurance and incur 'compensable' injuries are provided the exclusive remedy of 'workers' compensation benefits' . . . in lieu of common-law remedies.").

Cash Construction argues that any remaining claims were properly dismissed under Rule 91a because Sanchez Guillen "fail[ed] to sufficiently plead factual support for his claims" and the claims are time-barred because all facts alleged against Cash Construction occurred in 2004 at the latest. We agree. Although Rule 91a "limits the scope of the court's factual inquiry—the court must take the [plaintiff's] 'allegations' as true"—it "does not limit the scope of the court's legal inquiry in the same way." *Bethel*, 595 S.W.3d at 655. "In deciding a Rule 91a motion, a court may consider the defendant's pleadings if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court." *Id.* at 656. Thus, "Rule 91a permits motions to dismiss based on affirmative defenses 'if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'" *Id.* (quoting Tex. R. Civ. P. 91a.1).

Bare allegations of "mistreatment and humiliation," without more, would not entitle Sanchez Guillen to relief. Assuming these allegations are linked to Sanchez Guillen's

13

citations to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and chapter 21 of the labor code, and that allegations combined with broad citations could suffice to state a claim for which relief could be granted, his allegations are nonetheless barred by the applicable statutes of limitations. *See* 42 U.S.C. § 2000e–5(e)(1) (for claims under Title VII of Civil Rights Act of 1964, charges with Equal Employment Opportunity Commission "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred"), f(1) (claims under Title VII must be filed within 90 days of plaintiff's receipt of notice of right to sue or action will be dismissed); 42 U.S.C. § 12117(a) (applying § 2000e–5 to claims under Americans with Disabilities Act); Tex. Lab. Code §§ 21.202 ("[A] complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred"), .256 ("A civil action may not be brought under this subchapter later than the second anniversary of the date the complaint relating to the action is filed.").

To overcome the statutes of limitations, Sanchez Guillen pleaded the discovery rule, asserting that the statutes did not begin to run until he received his case file from the Division in 2023. But Cash Construction asserts that he is not entitled to rely on the rule as it relates to the claims against it. "Knowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209 (Tex. 2011); *see In re Jorden*, 249 S.W.3d 416, 422 (Tex. 2008) (orig. proceeding) ("[A] cause of action accrues for limitations purposes when a claimant learns of an injury, even if the rest of the essential facts are unknown."); *see also Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807,

14

814 (Tex. 2021) (noting that "once the defendant's wrongful conduct causes a legal injury, the injured party's claims based on that wrongful conduct accrue—and the limitations period begins to run—even if . . . the claimant does not yet know the specific cause of the injury or the party responsible for it"). The discovery rule's applicability "does not turn on whether the injured person knows the exact identity of the tortfeasor or all of the ways in which the tortfeasor was at fault in causing the injury." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). Because Sanchez Guillen was aware of Cash Construction's conduct by 2004, the discovery rule did not apply to toll limitations until 2023. Accordingly, we conclude the trial court did not err in dismissing for want of jurisdiction the claims against Cash Construction arising out of Sanchez Guillen's workers' compensation claims and dismissing with prejudice the remaining claims against Cash Construction.

**Pena's Plea to the Jurisdiction and 91a Motion**

Sanchez Guillen alleged that Pena, NAICO, and Cash Construction "acted in a collusive and deliberate manner to obstruct [Sanchez Guillen's] access to" workers' compensation benefits. As to Pena, the basis for alleging collusion was that Pena allegedly failed to present facts to the Commission that would have helped Sanchez Guillen's case and Pena "allowed important legal deadlines to expire" that prevented Sanchez Guillen "from accessing the Supplemental Income Benefits (SIBS) that [he] was legally entitled to." Sanchez Guillen also accused Pena of "legal abandonment" for informing the Commission that Pena was no longer representing Sanchez Guillen in 2004. Sanchez Guillen further complained that Pena did not file a civil suit against NAICO and Cash Construction outside of claims submitted through the Commission. He asserts that Pena violated Texas Disciplinary Rules of

15

Professional Conduct 1.01 (Competent and Diligent Representation) and 1.03 (Communication).[4] Pena filed a combined plea to the jurisdiction and motion to dismiss under Rule 91a. He sought dismissal based on (1) Sanchez Guillen's failure to exhaust administrative remedies, (2) res judicata, and (3) the expiration of any relevant statute of limitations. Following a hearing at which counsel for Pena emphasized res judicata and limitations as reasons for granting dismissal, the trial court entered an order granting the motion and dismissing the claims against Pena with prejudice.

Sanchez Guillen presents no argument regarding whether Pena should be treated differently from Cash Construction and NAICO with respect to exhaustion of administrative remedies. Instead, Sanchez Guillen insists that he did not need to exhaust administrative remedies because the Division has so far rejected his attempts to resolve his claims against Pena (and the other appellees) at the Division.

To the extent that the Division lacks jurisdiction over claims against a claimant's attorney, Pena asserts that the claims against him are barred by res judicata or limitations. Res judicata and limitations are pleas in bar that cannot form the basis for a plea to the jurisdiction, but can be the subject of a motion to dismiss under Rule 91a. *See Town Park Ctr., LLC v. City of Sealy*, 639 S.W.3d 170, 182–83 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding that res judicata "is not . . . a plea to the jurisdiction" and noting "[t]he distinction between a plea to the jurisdiction and a plea in bar is significant, not semantic."); *Montgomery County v. Fuqua*, 22 S.W.3d 662, 669 (Tex. App.—Beaumont 2000, pet. denied) ("Affirmative defenses are

---

[4] *See* Tex. Disciplinary Rules Prof'l Conduct preamble ¶ 15, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A ("These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached.").

'pleas in bar,' and do not provide a justification for summary dismissal on the pleadings."); *see also Vorwerk v. City of Bartlett*, No. 03-21-00001-CV, 2021 WL 3437889, at *4 n.4 (Tex. App.—Austin Aug. 6, 2021, no pet.) (mem. op.) (acknowledging res judicata is affirmative defense, not jurisdictional bar).

We agree that Pena is entitled to dismissal with prejudice under Rule 91a because he has conclusively established the affirmative defense of limitations based on the facts of Sanchez Guillen's petition. Sanchez Guillen cites section 16.004(a)(4) of the civil practice and remedies code, which provides a four-year limitations period for fraud claims. Other statutes of limitations that might apply would be four years or less. *See Zive v. Sandberg*, 644 S.W.3d 169, 174 (Tex. 2022) ("Claims for legal malpractice are subject to a two-year statute of limitations.") (citing Tex. Civ. Prac. & Rem. Code § 16.003(a); *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)); Tex. Civ. Prac. & Rem. Code § 16.051 (four-year residual limitations period). "Generally, '[a] cause of action for legal malpractice accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action.'" *Zive*, 644 S.W.3d at 174 (quoting *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991)). Although Sanchez Guillen asserts that the discovery rule applies and that any applicable statute of limitations did not begin to run until 2023, his alleged claims against Pena were known to him in 2003, when Pena advised that he would not be filing a cause of action against NAICO and Cash Construction; during Pena's representation of Sanchez Guillen from 2003 to 2004, when he allegedly failed to present important facts to the Commission and missed one or more deadlines to secure additional benefits for Sanchez Guillen; or, at the latest, in 2009, when Pena provided, at Sanchez Guillen's request, a letter formally resigning from representing Sanchez Guillen. The

17

live pleading contains no allegations of any action or inaction on Pena's part discovered in 2023 that were not already known to Sanchez Guillen by 2009. Having determined that Pena conclusively established the affirmative defense of limitations based on the facts of Sanchez Guillen's petition, we need not consider Pena's res judicata arguments. We conclude that the trial court did not err in dismissing with prejudice the claims against Pena.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissals of Sanchez Guillen's claims. [5]

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed: March 11, 2026

---

[5] Sanchez Guillen has filed a "motion to declare null" a benefit review conference that took place in August 2025. We dismiss the motion for want of jurisdiction. *See In re Crawford & Co.*, 458 S.W.3d at 923–24 ("In light of the Act's comprehensive system for resolving workers' compensation claims and the Division's role in that process, we concluded in *Ruttiger* that the Act provides the exclusive procedures and remedies for claims alleging that a workers' compensation carrier has improperly investigated, handled, or settled a workers' [stet] claim for benefits."). He has also filed a "motion for leave to file supplementary evidence," to which he has attached documents that he asks this Court to review. We deny the motion. *See* Tex. R. App. P. 34.1 (describing contents of appellate record); *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied) ("We are limited to the appellate record provided").